UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| KERRY M. SEALS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:06-cv-50 |
| ) | |
| MICHAEL J. ASTRUE, ) | Mattice/Carter |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Doc. No. 15) and defendant's Motion for Summary Judgment (Doc. No. 18).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

For the reasons stated herein, it is RECOMMENDED the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was thirty-three years old and had a high school education in 2002, the date his insured status expired (Tr. 687). He had past work experience as a plumber's helper, which was unskilled work at the heavy exertional level (Tr. 679). He was in the Navy from 1992 to 1997

1

and was given a medical discharge (Tr. 120).

## Claim for Benefits

Plaintiff filed his DIB application in December 2002, alleging disability from April 30, 1998[1] (Tr. 55-58). After his application was denied, he requested a hearing (Tr. 38-39, 45-46). On July 21, 2004, Plaintiff, represented by counsel, appeared and testified before ALJ Jerry C. Shirley (Tr. 674-95). On November 22, 2004, the ALJ found that, prior to his date last insured of December 31, 2002, Plaintiff was not disabled, because he retained the residual functional capacity (RFC) to perform work that exists in the national economy (Tr. 20-35). The Appeals Council's July 21, 2006, denial of review left the ALJ's decision as the final decision of the Commissioner (Tr. 7-10). *See* 20 C.F.R. § 404.981.

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a

---

[1] Plaintiff initially alleged disability beginning December 10,1997 (Tr. 56). Through his representative, Plaintiff amended his alleged onset date to April 30, 1998 (Tr. 678). Plaintiff apparently made a previous application for disability benefits, denied on April 29, 1998, that constituted res judicata (Tr. 677).

severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).

Once, however, the Plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.,* 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994)

(citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2002.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's chronic obstructive pulmonary disease; status post left lower lobectomy for neurogenic sarcoma in March 1998; degenerative joint disease of the left wrist; status post operative left carpal tunnel release surgery in 1996; migraine headaches; right shoulder bursitis/tendinitis; gastroesophageal reflux disease; right knee strain; and a bipolar disorder are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: he can lift and carry up to ten pounds; that he would need only occasional or incidental walking or standing as per his physician at the Veterans' Administration as contained in Exhibit 4F; that any pain he has is less than moderately severe; that, on a mental assessment, he has moderate or less restrictions in each and every area of his ability to cope with the mental demands of the workplace, that he has had no more than one episode of decompensation of extended duration, and that he has had GAF assessments of 60 on at least one occasion.

7. The claimant is unable to perform any of his past relevant work (20 CRF § 404.1565).

8. The claimant is a "younger individual" (20 CFR § 404.1563).

9. The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

11. The claimant's impairments, considered alone and in combination, permit a residual functional capacity to perform a significant range of sedentary work (20 CFR § 404.1567).

12. Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.27 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a surveillance systems monitor, an order clerk, and a telephone solicitor.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

(Tr. 33-34).

## Issues Raised

Plaintiff seeks reversal or remand asserting the following errors:

1. The ALJ erred in failing to consider the previous determinations of the Veterans Administration ("VA") that Plaintiff was entitled to disability benefits.

2. The ALJ failed to consider the entire record in noting that Plaintiff's neurological impairment was not disabling.

## Relevant Facts

### Medical Evidence

Plaintiff makes two arguments: that the ALJ failed to give weight to the VA's finding of 100% disability and that the ALJ failed to properly consider his neurological condition, primarily headaches. This summary will focus on Plaintiff's complaints of headaches and consultative examinations and medical opinions of record.

Plaintiff was treated by the VA (Tr. 117-216, 234-516). The record demonstrates the Plaintiff has a history of: Bipolar disorder; Migraine headaches; Menier's disease; residual

shortness of breath from lung cancer; Degenerative joint disease in the left wrist; Right shoulder bursistis and tendonitis; Right knee strain with possible meniscal tear; and Gastroesophageal reflux disease ("GERD") (Plaintiff's Brief at 3). In March 1998, Plaintiff underwent lung surgery to remove a left lower lobe tumor (Tr. 117-18, 464-93, 516). In January 1999, Plaintiff was admitted to the hospital for psychiatric treatment (Tr. 119-216). At that point, he was 100% disabled, according to the VA, based on lung cancer, 50% disabled due to depression, and 30% disabled due to migraine headaches (Tr. 119, 121). Plaintiff explained that his medications were not working that good so he had stopped taking his medications, started drinking vodka, and got depressed, easily agitated, and lost his temper (Tr. 140). He explained that he spent his days working on his computer (Tr. 140).

Plaintiff was hospitalized in January 1999 after reporting sleeplessness, homicidal ideation, auditory hallucinations, spending sprees and violent outbursts (Tr. 119-23). At that time, doctors noted a previous hospitalization for depressive disorder lasting 36 days in 1996 (Tr. 120). Plaintiff remained in the VA Hospital in Murfreesboro, Tennessee for 12 days, and at that point was diagnosed with bipolar disorder. (Plaintiff's Brief at 3). In June 2000, Plaintiff saw Zandra R. Petway, M.D. at the VA, for a consultative examination (Tr. 341-43). Plaintiff complained of left carpal tunnel syndrome, left wrist pain, GERD, hiatal hernia, right shoulder pain, post-surgery for lung cancer, breathing problems, and migraine headaches (Tr. 342-43). Plaintiff reported that his migraine headaches occurred twice a week and lasted between seven to ten hours at a time and, occasionally, seven days straight (Tr. 342). He reported that he tried medications and that Imitrex caused abdominal pain (Tr. 342). After examination and review of the medical file, Dr. Petway opined that Plaintiff could work a sedentary-type job, which she

6

defined as one that allowed him to sit down for the entire period that he was employed and with only occasional or incidental walking or standing (Tr. 341).

In November 2002, Plaintiff was admitted to the hospital for psychiatric treatment (Tr. 217-33). Plaintiff stated his medications were not working, as he had an increasing urge to spend money (Tr. 217). However, he also admitted that his father convinced him to stop taking his Depakote (mood stabilizer) (Tr. 217). In February 2003, the state agency reviewer opined that Plaintiff's mental impairment did not meet a listed impairment (Tr. 527). As for an RFC, the doctor opined that Plaintiff could follow routine instructions and sustain attention to simple tasks for extended periods (Tr. 534). He could tolerate ordinary work pressures but not excessive or multiple demands (Tr. 534). Contact with the public should be casual (Tr. 534). Feedback should be supportive (Tr. 534). He could adapt to gradual change (Tr. 534). He would need help planning due to impaired judgment when depressed or manic (Tr. 534).

In July 2004, Plaintiff's psychiatrist at the VA, Dr. Syed Rashid, reported that "[p]atient is remaining as stabilized as possible. . . However, he remains nervous and is unable to take stresses of daily life. He has remained unfit for gainful employment." (Tr. 641). Dr. Rashid assessed a GAF of 50 (*Id.*). (Plaintiff's Brief at 4).

Plaintiff at a June 2000 consultative examination reported migraine headaches (Tr. 341). *See also* Tr. 369, August 1999; Tr. 346, April 2000; Tr. 341, June 2000; Tr. 304, December 2000; Tr. 288, June 2001; Tr. 280, August 2001; Tr. 247, August 2002; Tr. 580, September 2003). Plaintiff has been treated for his migraine symptoms with injections of Imitrex (Tr. 272); however, no treatment has succeeded in completely preventing such headaches from occurring. In an April 19, 2000, treatment note he reported his migraine headaches were fairly stable (Tr.

346). In August 2003, Plaintiff reported an episode of syncope, lasting for 2 minutes (Tr. 580). On October 10, 2003, Plaintiff reported a history of dizziness, with 10 episodes daily lasting for 3-30 minutes; as well as constant tinnitus (Tr. 566). In March 2003, a VA doctor noted that "It is my impression that Mr. Seals has episodic tinnitus, hearing loss and vertigo. This seems to fit a picture of Meniere's disease." (Tr. 669). By February 2004, Plaintiff reported he was doing much better - his headaches had decreased in frequency to one every other week and had no further syncopal episodes; however, he continued to report persistent tinnitus (Tr. 548). While several neurological tests have failed to pinpoint a source of Plaintiff's neurological disorder, an EEG completed in February 1999 did indicate that "focal slowing in the central region suggests a structural lesion and phase reversal in the central leads also point toward a possible seizure focus." (Tr. 420) (Plaintiff's Brief at 4, 5).

Vocational Evidence

John McKinney testified as a vocational expert ("VE") (Tr. 679-94). The ALJ posed a hypothetical question to the VE, asking him to assume an individual of Plaintiff's age, education, and past work experience (Tr. 693). This individual was restricted to sedentary work with only occasional or incidental walking or standing (Tr. 693-94). Any pain he had would be less than moderately severe (Tr. 693). He would have moderate or less restriction in each and every area pertaining to the ability to cope with the mental demands of the workplace; had no more than one episode of decompensation; and a GAF score, at least on one occasion, of 60 (Tr. 693-94). The VE testified that jobs were available for such an individual and gave samples such as surveillance systems monitor (85,000 national jobs); order clerk (20,000 national jobs); and telephone solicitor (75,000 national jobs) (Tr. 694).

Analysis

Plaintiff raises two issues: that the ALJ failed to give weight to the VA's finding of 100% disability and that the ALJ failed to properly consider his neurological condition, primarily migraine headaches. All other issues are waived. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F 2d 679, 681 (6th Cir. 1989) (issues waived if not raised).

1). Plaintiff first asserts that the ALJ erred in assigning no weight to the disability determination of the VA (Plaintiff's Brief 7-8). Plaintiff argues that he has been found 100% disabled by the VA based on his history of lung cancer, depression, and migraine headaches (Plaintiff's Brief at 7, citing to Tr. 121). As noted by the Commissioner, the VA determination of disability is not determinative of social security disability. *See* 20 C.F.R. § 404.1504 (decision by another governmental agency is based on its rules and is not binding on Social Security). The fact that the ALJ gave the VA rating no weight does not establish that he gave the VA opinion no consideration. The ALJ considered the VA opinion in connection with the VA treatment records. The ALJ specifically refers to the Veterans Administration's disability rating in two places in his opinion. The ALJ notes Plaintiff testified he was originally awarded a 10% disability benefit from the military due to carpal tunnel syndrome and it has subsequently been raised to 100%, and his disability has been classified as permanent and total (Opinion, p. 3, Tr. 22). On page 5 of his very thorough 16 page opinion, the ALJ specifically refers to the fact Plaintiff was granted an employability rating by the Veterans Administration and was being paid at the 100% rate (Tr. 24). The ALJ referred to the March 9, 2000 report from his counselor who noted Plaintiff had been granted unemployability by the VA. However, in that same treatment note his counselor opined Plaintiff seemed to be in control of events, had a positive affect and good mood. The

9

counselor also noted he did not need to see Plaintiff again unless his psychological condition changes. His GAF on that date was 85 (Tr. 352-53). The Commissioner argues the ALJ justifiably gave the VA's rating of disability no weight because the VA treatment notes do not support a finding of disability.

The ALJ explained that, although the medical record reflected impairments of COPD, asthma, left carpal syndrome, right knee pain, migraine headaches, bursitis, joint pain, GERD, and bipolar disorder, the objective findings in the record did not establish disability (Tr. 30-31). The Plaintiff was diagnosed with bipolar disorder prior to his discharge from the Navy in 1997 (Tr. 21, 681). Upon examination of the Plaintiff's treatment records in regards to his diagnosis of bipolar disorder, the ALJ opined:

> While the undersigned finds this to be a "severe" mental impairment within the meaning of the Social Security Act, it does not, when considered both singly and in combination with his above stated physical impairments, either meet or equal the criteria needed to establish disability based on affective disorders as found at Section 12.04 of the Listing of Impairments (Tr. 28).

It was noted that Plaintiff was hospitalized in January 1999 due to depression, increased irritability, and manic episodes. He was again diagnosed with bipolar disorder and placed on medication (Tr. 28, 119). VA treatment notes demonstrate that Plaintiff has done well with treatment with one exception being in November 2002, at which time Plaintiff required inpatient treatment for his bipolar disorder, because he stopped taking his medication (Tr. 29, 217). The ALJ further notes the findings of the VA staff psychiatrist who rated Plaintiff as having GAF scores of 75 and 85 in January and March of 2000 (Tr. 39 referring to 352, 357). The ALJ further noted the treatment records of the Veterans Administration Medical Center. . . show that the claimant has been assessed as having only mild to moderate symptoms and limitations resulting

from his bipolar disorder as indicated by the GAF score of 60 and above at all times since his diagnosis in January 1999. . . (Tr. 30). The ALJ also relied on the state reviewing physician who opined that Plaintiff had only moderate or less restrictions in his ability to cope with the mental demands of work (Tr. 34, 534). Furthermore, the notation by Dr. Zandra Petaway, a VA doctor who, in June 2000, gave a medical opinion consistent with the ALJ's RFC finding. Despite Plaintiff's complaints that his migraine headaches occurred twice a week and lasted between seven to ten hours at a time and, occasionally, seven days straight, Dr. Petaway stated that it was in her medical opinion that Plaintiff could work a sedentary-type job, which she defined as the ability to sit down during the work day with only occasional or incidental walking or standing (Tr. 341-343). In summary, the ALJ is not bound to accept the determination of disability reached by the VA. It appears from the record that the ALJ independently evaluated the evidence and concluded the Plaintiff was not disabled. The ALJ was aware that the VA had found Plaintiff disabled, but his decision reaching the opposite conclusion for purposes of Social Security Disability is supported by substantial evidence.

2). Plaintiff asserts the ALJ failed to properly consider Plaintiff's neurological impairment. Plaintiff claims that the ALJ erred in his analysis of his credibility as it related to the headaches (Plaintiff's Brief at 8-10). In his testimony, Plaintiff stated that he had suffered from migraine headaches since 1993; these headaches could last up to a week; he took medication for his headaches; and he slept it off when he had a headache (Tr. 683-684). The ALJ noted Plaintiff's testimony regarding his headaches and further referred to a June 1999 MRI brain scan (performed after Plaintiff complained of headaches) which was normal (Tr. 24, 388). Thereafter, Plaintiff complained of headaches and was treated with medication (Tr. 24, 247, 346, 364). A

11

brain MRI in March 2001 was normal (Tr. 26, 297). In August 2002, the VA doctor noted that Plaintiff took medication which helped his headaches (Tr. 26, 297). In October 2003, ENG testing and MRI brain scans were both normal (Tr. 27-28, 559).

Plaintiff asserts the ALJ failed to note in his decision, the EEG performed in February 1999 that did indicate that "focal showing in the central region suggests a structural lesion and phase reversal in the central leads also point toward a possible seizure focus" (Tr. 421). The ALJ does reference Plaintiff's examination at the Veterans Administration Medical Center in February 1999 (Tr. 23). The ALJ further examined the Plaintiff's post-February 1999 treatment records in which the MRI scans detected no brain abnormalities (Tr. 24, 26, 27-28, 297, 388, 559).

The ALJ also considered Plaintiff's credibility and found the inconsistencies in the record warranted a finding that Plaintiff was not credible to the extent that he alleged disability. Plaintiff testified that his activities were very limited, and he had no social life; however, this testimony was in contrast to the statements that he made to the VA that he was involved in a satellite television business with his stepfather in May 1999 (Tr. 403); he went to Florida in July 1999 to visit a friend (Tr. 373); he had a girlfriend in 1999 and married her in April 2001 (Tr. 295); and he reported several household chores, such as hammering, and he spent his days working on the computer (Tr. 29-30, 140, 285). I conclude these inconsistencies support the ALJ's credibility determination.

A claimant's statement that he/she is experiencing disabling pain or other symptoms will not, taken alone, establish he/she is disabled. 20 C.F.R. §§ 404.1529(a) and 416.929(a). One must first use a two-pronged analysis requiring some degree of objective medical evidence to

evaluate a claimant's assertions of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky v. Bowen*, 35 F. 3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Secretary of Health and Human Servs.*, 801 F. 2d 847, 853 (6th Cir. 1986)); *see also*, 20 C.F.R. §§ 404.1529 (a) and 416.929 (a).

As the Commissioner argues, the fact that Plaintiff disagrees with the ALJ's decision does not make the decision unsupported by substantial evidence. *See Mullen v. Bowen*, 800 F. 2d 535, 545 (6th Cir. 1986) ("The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts."). The ALJ was simply doing what he was charged to do; weigh the entire record evidence and make a determination as to disability. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F. 3d 284, 286 (6th Cir. 1994) ("This court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.").

Once the ALJ determined that Plaintiff could not return to his past relevant work, he assessed his residual functional capacity for sedentary work and then relied on the VE's testimony to find that jobs existed in significant numbers in the national economy that Plaintiff remained capable of performing (Tr. 33). *See Varley v. Sec'y of Health and Human Servs.*, 820 F 2d 777 (6th Cir. 1987) (ALJ may rely of VE testimony.) Thus the ALJ met his burden at step five of the sequential evaluation process.

I conclude the ALJ reasonably relied on the record as a whole to find that Plaintiff retained the RFC to perform work that exists in significant numbers in the national economy.

Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. No. 18) be GRANTED, the Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 15) be DENIED, and this case be DISMISSED.[2]

                                                          s/William B. Mitchell Carter
                                                          UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).